# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>                                         Plaintiff,<br><br>    vs.<br><br>DILLARD'S INC. and DILLARD STORE SERVICES, INC.,<br><br>                                         Defendants. | CASE NO. 08cv1780-IEG(PCL)<br><br>Order Denying Defendants' Motion for Summary Judgment on All Claims [Doc. 73]; Denying Defendants' Motion to Preclude the EEOC from Recovering on Behalf of Anyone Other than Corina Scott, Irma Moreno, and Allyson Mazon [Doc. 76] |

The EEOC brought this action under 42 U.S.C. § 12112 on behalf of Charging Party Corina Scott[1] and others similarly-situated who were adversely affected by the Attendance Policy maintained by Defendants Dillard's, Inc. and Dillard Store Services, Inc. (Dillard's) between March of 2005 and July of 2007. The EEOC also seeks relief on behalf of Ms. Scott for retaliatory discharge in violation of 42 U.S.C. § 12203. Presently before the Court are two motions filed by Dillard's seeking: (1) summary judgment on all claims asserted by the EEOC as well as on the remedies available, and (2) summary judgment precluding the EEOC from pursuing claims on behalf of individuals not already identified and adjudicating the claims of Corina Scott, Irma Moreno, and Allyson Mazon. For the reasons set forth herein, the Court DENIES both motions.

---

[1] The Court previously dismissed as time-barred the claims brought on behalf of Charging Party Brittany Rios Kim.

### *Factual Background*

When Dillard's El Centro Store opened in March of 2005, it had in place an Attendance Policy. [Declaration of Nanette Savage-Coley, Doc. 73-2, ¶ 4, Exhibit 1.] According to that policy, an employee's health-related absence would not be excused unless the employee submitted a doctor's note stating "the nature of the absence (such as migraine, high blood pressure, etc ...." [Id.; EEOC Exhibit A.] Dillard's reaffirmed this policy in June of 2006, clarifying that the doctor's note "must state the condition being treated." [Savage-Coley Decl., Exhibit 2, p. 2, ¶ 6.] This policy applied to all employees with health-related absences. [Savage-Coley Decl., ¶ 4.] An employee who accumulated four unexcused absences of any kind would be terminated. [Declaration of Penny Ervin, Doc. 76-2, ¶ 4.]

As applied in this case, Charging Party Corina Scott was absent from work between May 29 and June 3, 2006. [Declaration of Corina Scott, EEOC Exhibit D, ¶ 6.] Ms. Scott's absence was due to a health-related condition for which she sought medical attention. [Id.] To excuse the absence, Ms. Scott obtained a signed note from her doctor stating "off work this week return 6/5/06." [Deposition of Corina Scott, Doc. 76-8, Exhibit 33 (ECF page 21).] The note did not state her medical condition. [Id.] Ms. Scott submitted the note to the Assistant Store Manager, Penny Ervin, but Ms. Ervin did not accept the note because it did not state the condition being treated. [Scott Decl., ¶ 6; Ervin Decl., ¶ 6.] Ms. Ervin clarified she was not looking for a specific diagnosis, but just the "nature of the illness" or the "nature of the absence." As an example, Ms. Ervin stated would have accepted a note that said Ms. Scott went to the doctor, the doctor decided she needed some medication, and it would take a few days for the medication to work. [Ervin Decl., ¶ 6.] In requiring a more specific note, Ms. Ervin was looking to verify Ms. Scott had a legitimate medical reason for being unable to work. [Id.] Ms. Scott believed she was not required to provide Dillard's with any additional explanation, and her doctor told her she did not need to disclose her condition. [Scott Decl., ¶ 6.] Because she did not provide any further information, the absence was unexcused and Ms. Scott's employment was terminated on June 6, 2006. [Scott Decl., ¶ 7.]

Irma Moreno also worked at the Dillard's El Centro Store beginning in December of 2005.

1  [Deposition of Irma Moreno, Doc. 80, Exhibit I, p. 54; Declaration of Irma Moreno, Doc. 80,
2  Exhibit J, ¶ 2.] On November 14, 2006, Ms. Moreno was unable to attend work due to a health-
3  related condition for which she sought medical attention. [Moreno Depo., p. 53; Moreno Decl.,
4  ¶ 6.] Ms. Moreno obtained a note from her medical provider, but the note did not state her medical
5  condition.  Dillard's would not accept the note, so Ms. Moreno returned to her medical provider
6  and obtained a signed note stating her medical condition. [Moreno Depo., p. 100; Moreno Decl.,
7  ¶ 6.] Dillard's accepted this second note, and Dillard's excused her absence based thereon.
8  [Moreno Decl., ¶ 7.] Ms. Moreno again missed work due to a health-related condition for which
9  she sought medical attention beginning on April 20, 2007. [Moreno Depo., p. 65; Moreno Decl.,
10 ¶ 8.] The first note Ms. Moreno obtained from her health care provider did not state her medical
11 condition, and Dillard's Supervisor Amy Camacho told her the note was insufficient for that
12 reason. [Moreno Depo., p. 65; Moreno Decl., ¶ 8.] Ms. Moreno returned to her medical provider to
13 obtain a note stating her medical condition, and Dillard's accepted this second note. [Moreno
14 Depo., p. 70; Moreno Decl., ¶ 9.] Dillard's terminated Ms. Moreno's employment on May 17,
15 2007, after she failed to return from a leave of absence.[2] [Moreno Depo., p. 65; Moreno Decl., ¶ 3;
16 Declaration of Nanette Savage-Coley, Doc. 76-4, ¶ 5, Exhibit 2 (ECF p.9).]

17     Allyson Mazon began working at Dillard's El Centro Store on September 27, 2005.
18 [Deposition of Allyson Mazon, Doc. 80, Exhibit K, p. 53; Declaration of Allyson Mazon, Doc. 80,
19 Exhibit L, ¶ 2.]  On four separate occasions, Ms. Mazon was unable to attend work due to a health-
20 related condition for which she sought medical attention. [Mazon Depo., pp. 74-76, 87-88, 94-96;
21 Mazon Decl., ¶¶ 6, 8, 9, and 11.] On each of those four occasions, Ms. Mazon initially provided
22 Dillard's with a signed note from her medical provider, but which did not state her medical
23 condition.  After Dillard's would not accept the notes, Ms. Mazon returned to her medical provider
24 and obtained a note stating her medical condition. [Id.] Dillard's accepted these notes stating her
25 medical condition, and excused her absence on each of those occasions. [Id.] On one additional
26 occasion when Ms. Mazon was unable to attend work due to a health-related condition, she
27 initially obtained a note from her medical provider that stated her medical condition. [Mazon

---

[2]The EEOC does not seek any remedy related to Dillard's termination of Ms. Moreno.

1  Depo., p. 74 and 93; Mazon Decl., ¶ 10.] Ms. Mazon voluntarily resigned her employment with
2  Dillard's on February 16, 2006. [Mazon Depo., p. 22; Mazon Decl., ¶ 3; Ervin Decl., ¶ 9, Tab 4.]
3  	Dillard's El Centro Store rescinded the Attendance Policy in July of 2007. [Savage-Coley
4  Decl., ¶ 6.] The Policy since July of 2007 requires only that employees with health-related
5  absences "report off work prior to their scheduled start time." [Id., ¶ 6, Exhibit 3.] An employee is
6  no longer required to submit a doctor's note or advise her supervisor of the health condition
7  requiring absence.
8  	On January 27 and January 31, the EEOC disclosed the names of 60 individuals who it
9  asserts were subjected to Dillard's allegedly unlawful Attendance Policy.  The EEOC seeks relief
10 in this case on behalf of each of these individuals.

### *Legal Standard*

12 	Summary judgment is proper where the pleadings and materials demonstrate "there is no
13 genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."
14 Fed. R. Civ. P. 56(c)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A material issue of
15 fact is a question a trier of fact must answer to determine the rights of the parties under the
16 applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute
17 is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving
18 party." Id.  The court must review the record as a whole and draw all reasonable inferences in
19 favor of the non-moving party.  Hernandez v. Spacelabs Med. Inc., 343 F.3d 1107, 1112 (9th Cir.
20 2003).  However, unsupported conjecture or conclusory statements are insufficient to defeat
21 summary judgment.  Id.; Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1103 (9th Cir. 2008).

### *Discussion*

23 *1.	Dillard's Motion for Summary Judgment on All Claims*
24 	In its first motion, Dillard's seeks summary judgment on all the EEOC's claims, arguing
25 (a) 42 U.S.C. § 12112(d)(4)(A) does not prohibit employers from making the type of inquiry
26 Dillard's made of employees before excusing health-related absences; (b) Dillard's policy was job-
27 related and consistent with business necessity; and (c) the relief the EEOC seeks (compensatory
28 and punitive damages and injunctive relief) is unavailable.

      a.    Did Dillard's policy requiring employees to "state the condition being treated" constitute a prohibited inquiry under 42 U.S.C. § 12112(d)(4)(A)?

Pursuant to 42 U.S.C. § 12112(d)(4)(A), "a covered entity shall not ... make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." Nonetheless, "[a] covered entity may make inquiries into the ability of an employee to perform job-related functions." § 12112(d)(4)(B). Dillard's argues its policy which required an employee to disclose the condition being treated in order to excuse a health-related absence does not violate the plain language of § 12112(d)(4)(A).

The Ninth Circuit has not determined what constitutes an unlawful inquiry under § 12112(d)(4)(A), and the decisions of the other two Circuits which have considered the question are in conflict. In <u>Conroy v. New York Department of Correctional Services</u>, 333 F.3d 88 (2d Cir. 2003), the court considered a Department of Correction Services (DOCS) policy requiring employees who returned to work after an absence of four days or more[3] to provide a medical certification which "must include a brief general diagnosis that is 'sufficiently informative as to allow [DOCS] to make a determination concerning the employee's entitlement to leave or to evaluate the need to have an employee examined ... prior to returning to duty'." 333 F.3d at 92. The employee could not merely provide a doctor's note stating she was under that doctor's care -- the note had to also contain a general diagnosis giving rise to the treatment (such as recovering from minor surgery or treated for minor foot injury). The DOCS argued its inquiries pursuant to the policy did not violate § 12112(d)(4)(A) because they were not trying to determine whether the employee had a disability. Instead, the DOCS sought only to determine a "general" diagnosis as it related to the employee's ability to return to work. <u>Id</u>. at 96. The DOCS argued such inquiry did not fall within the scope of the prohibited inquiry under § 12112(d)(4)(A).

The court cited the EEOC's own guidance as to what constitutes a disability-related inquiry:

    A "disability-related inquiry" is a question that is likely to elicit information about a

---

[3]Under certain specified circumstances, the DOCS could also require employees absent for a shorter period to provide a certification under the policy.

> disability, such as asking employees about: whether they have or ever had a disability; the kinds of prescription medications they are taking; and, the results of any genetic tests they have had.
>
> Disability-related inquiries also include asking an employee's co-worker, family member, or doctor about the employee's disability.
>
> Questions that are *not* likely to elicit information about a disability are always permitted, and they include asking employees about their general well-being; whether they can perform job functions; and about their current illegal use of drugs.

Id. at 96 (quoting *Questions and Answers: Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees Under the Americans with Disabilities Act* (EEOC, July 27, 2000).[4] In rejecting the DOCS's argument, the Second Circuit noted "even what DOCS refers to as a 'general diagnosis' may tend to reveal a disability." Id. The court rejected the DOCS's argument that a "diagnosis" is not the equivalent of a "disability" stating "[e]ven where a diagnosis alone is not sufficient to establish that an employee is disabled, the diagnosis may give rise to the *perception* of a disability ...." Id. Based thereon, the court found the DOCS's policy required an improper inquiry in violation of § 12112(d)(4)(A).

More recently, the Sixth Circuit in Lee v. City of Columbus, 636 F.3d 245 (6th Cir. 2011) considered whether the City's almost identical policy violated the Rehabilitation Act.[5] The City's policy in Lee required employees who were returning to regular duty following sick leave, injury leave, or restricted duty, to submit a doctor's note which "must state the nature of the illness and that you are capable of returning to regular duty." 636 F.3d at 248. The Sixth Circuit disagreed with the Second Circuit's analysis in Conroy, stating that the broad "may tend to reveal" standard used by the court in Conroy "has unnecessarily swept within the statute's prohibition numerous legitimate and innocuous inquiries that are not aimed at identifying a disability." The court

---

[4]Although not controlling, the EEOC's regulations and guidance "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." Indergard v. Georgia-Pacific Corp., 582 F.3d 1049, 1053 (9th Cir. 2009).

[5]The parties spend a good deal of time discussing and distinguishing Lee and Conroy based upon the fact one involved a claim under the ADA and one involved a claim under the Rehabilitation Act. Although the ADA and Rehabilitation Act both prohibit discrimination against the disabled, the Rehabilitation Act prohibits discrimination *solely* on the basis of disability. By contrast, the ADA prohibits discrimination "on the basis of disability" which includes cases where the adverse action was the result of both the disability and some other motive (i.e. "mixed motive"). To the extent this may be pertinent to the discussion, the Court notes the EEOC in this case brings suit under the ADA, making the case more similar to Conroy.

1 concluded that the City's policy requiring returning employees to state the "nature of the illness" was not necessarily a question about whether the employee is disabled. 636 F.3d at 254-55. The court found the City's policy, which was applicable across the board to all employees whether they are disabled or not, was a valid and acceptable inquiry under § 12112(d)(4)(A). Id. at 257.

Although the Ninth Circuit has not considered what constitutes an improper "medical inquiry" under § 12112(d)(4)(A), it has considered when a medical examination under that subsection triggers protections under the ADA. In Indergard v. Georgia-Pacific Corporation, 582 F.3d 1049 (9th Cir. 2009), Indergard had taken medical leave to undergo knee surgery, and remained on medical leave for approximately 14 months. Under the company's policy, Indergard was required to submit to a physical capacity evaluation (PCE) prior to returning to work from medical leave. The court considered whether Georgia-Pacific's policy requiring Indergard to submit to a PCE prior to returning to work from medical leave violated § 12112(d)(4)(A). The court noted that while an employer could inquire "into the ability of an employee to perform job-related functions," 29 C.F.R. § 1630.14(c), it could not require a medical examination unless such examination was job related and a business necessity.

In concluding Georgia-Pacific's examination of Indergard was a prohibited examination within the meaning of § 12112(d)(4)(A), the court looked at the Second Circuit's decision in Conroy. In particular, the Ninth Circuit relied on the language in Conroy stating that even a requirement that an employee provide her employer with a "general diagnosis" to justify entitlement to sick leave "may tend to reveal a disability." 582 F.3d at 1056. The court found Conroy's analysis "useful to the extent that portions of Indergard's PCE went beyond simply measuring her physical ability to perform job tasks and could have revealed a disability." Id. Because the PCE administered by Georgia-Pacific "involved tests and inquiries capable of revealing to GP whether she suffered from a disability" the court conclude the PCE was a medical examination under § 12112(d)(4)(A). Id.

Based upon Conroy and Indergard, the Court concludes Dillard's Attendance Policy, on its face, permitted supervisors to conduct impermissible disability-related inquiries under § 12112(d)(4)(A). The Policy required an employee to disclose "the nature of the absence (such as

1  migraine, high blood pressure, etc ....)" and "the condition being treated."  This is substantially
2  similar to the "brief general diagnosis" the Second Circuit in Conroy found to be impermissible.
3  Such inquiry by Dillard's "may tend to reveal a disability."  Indergard, 582 F.3d at 1056.  The
4  Policy specifically required employees to disclose their underlying medical condition, and gave as
5  examples migraines and high blood pressure.  Yet these are conditions which may evidence a
6  disability.  Rohr v. Salt River Project Agricultural Imp. and Power Dist., 555 F.3d 850, 863 (9th
7  Cir. 2009) (reversing district court's grant of summary judgment because medical test required by
8  employer screened out plaintiff on account of diabetes-related high blood pressure in violation of
9  42 U.S.C. § 12112(b)(6)); Dvorak v. Clean Water Services, 319 Fed. Appx. 538 (9th Cir. 2009)
10 (reversing summary judgment for employer where employee had "severe neck pain and frequent
11 migraines).

12  Dillard's argues that its Policy simply required a "general diagnosis" and no detail which
13 would tend to disclose an underlying disability.  However, the EEOC has submitted evidence
14 demonstrating that if an employee submitted a physician's note stating her absence from work was
15 necessary because of an underlying medical condition, but failed to specify the underlying medical
16 condition, such absence would not be excused under Dillard's Attendance Policy.  Dillard's could
17 have required its employees to submit a doctor's note specifying the date on which the employee
18 was seen, stating that the absence from work was medically necessary, and stating the date on
19 which such employee would be able to return to work.  Dillard's Policy, however, required the
20 employee to submit a doctor's note disclosing the underlying condition for which she was treated.
21 Such Policy invites intrusive questioning into the employee's medical condition, and tends to elicit
22 information regarding an actual or perceived disability.  Absent a showing that the Policy was job-
23 related and consistent with business necessity, it violates § 12112(d)(4)(A).

24  b. Is Dillard's policy job-related and consistent with business necessity?

25  Dillard's argues that if the Court determines its general policy is within the scope of
26 § 12112(d)(4)(A), any inquiry into the employee's medical condition is both job-related and
27 consistent with business necessity. Dillard's argues the Attendance Policy served the overlapping
28 purposes of verifying the legitimacy of the medical absence and effectively permitting only

1 verifiable medical absences to be excused.  Dillard's also asserts the Policy was necessary to
2 ensure an employee can safely return to work without posing a threat to the health or safety of
3 others.[6]

4      Dillard's bears the burden of proving both job-relatedness and business necessity.
5 Fredenburg v. Contra Costa County, 172 F.3d 1176, 1182-83 (9th Cir. 1999); Rohr, 555 F.3d at
6 862.  The standard to establish business necessity is "quite high."  Indergard, 582 F.3d at 1052-53;
7 Brownfield v. City of Yakima, 612 F.3d 1140, 1146 (9th Cir. 2010).  Dillard's must demonstrate its
8 inquiry "genuinely serves the asserted business necessity and that the request is no broader or more
9 intrusive than necessary."  Conroy, 333 F.3d at 98; see also Brownfield, 612 F.3d at 1146.

10      Here, Dillard's has presented no evidence supporting its claim that its Policy is job-related
11 or a matter of business necessity.  There is no evidence Dillard's needed to know the nature of the
12 employee's medical condition because of excessive absences or in order to protect the health and
13 safety of its other employees.  Dillard's makes no attempt to explain why it is necessary for the
14 doctor's note to state the medical condition for which an employee is being treated.  Where a
15 medical provider verifies in writing that the employee has a medical condition, which required her
16 to be out of work, and also specifies when the employee may return to work, Dillard's has not
17 explained why it is necessary to identify the underlying medical condition.  Finally, Dillard's
18 rescinded its policy of requiring doctor's notes in July of 2007.  If the Policy was indeed job-
19 related and a matter of business necessity, Dillard's has failed to explain how it is now able to
20 operate as a business without such policy.  Dillard's is not entitled to summary judgment on its
21 claim that the Attendance Policy, on its face, fell outside the prohibition against disability-related
22 inquiries under § 12112(d)(4)(A).

23     c.    Available remedies

24      Dillard's asserts that even if the EEOC can move forward with its claim under
25 § 12112(d)(4)(A), compensatory and punitive damages awards are not available for violations of

---

27    [6]Dillard's argues it sought the information in part to determine whether the employee
28 qualified for an accommodation or leave under the Family Medical Leave Act.  Dillard's does not, however, cite any authority which would permit it to inquire under § 12112(d)(4)(A) to learn such information.

that section. Furthermore, Dillard's asserts the EEOC's claim for injunctive relief is moot as Dillard's has rescinded its policy and has no intention of reinstating it in the future.

Dillard's argument regarding the availability of compensatory and punitive damages lacks merit. Pursuant to 42 U.S.C. § 1981a, compensatory and punitive damages are available in an action against a respondent who violated the requirements of section 102 of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112. In its motion, Dillard's argues that while § 1981a authorizes damages based upon a violation of 42 U.S.C. § 12112, the Ninth Circuit in <u>Alvarado v. Cajun Operating Co.</u>, 588 F.3d 1261, 1268 (9th Cir. 2009)[7], limited the availability of damages to cases of intentional discrimination under § 12112(a) or failure to accommodate under § 12112(b)(5). However, the text of § 12112(d)(1) provides that a prohibited examination or inquiry under that subsection constitutes a form of discrimination as prohibited by subsection (a). Thus, Dillard's claim that a plaintiff is entitled to damages under § 12112(a), but not § 12112(d)(4), is illogical. A prohibited examination or inquiry under subsection (d)(4) constitutes discrimination under § 12112(a), and Dillard's concedes compensatory and punitive damages may be awarded under § 1981a based upon a violation of § 12112(a). Dillard's is not entitled to summary judgment on the EEOC's claims for compensatory damages.

Dillard's also argues it is entitled to summary judgment on the EEOC's claim for punitive damages because the EEOC has not shown Dillard's engaged "in a discriminatory practice ... with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). A plaintiff seeking punitive damages need not show actual malice. Instead, the relevant standard requires that in order to be liable for punitive damages, "an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law." <u>Kolstad v. American Dental Ass'n</u>, 527 U.S. 526, 536 (1999). This requires "a positive element of conscious wrongdoing" on the part of the defendant. <u>Id.</u> at 538. "The questions of malice and reckless indifference are subjective questions concerning the employer's motive or intent, rather

---

[7]In <u>Alvarado</u>, the court held that the damages provisions of § 1981a did not allow for compensatory and punitive damages for ADA claims of retaliation. The court reached such conclusion after examining the language of § 1981a, which did not incorporate its remedial reach to ADA retaliation aims under 42 U.S.C. § 12203.

than an objective inquiry into whether the employer's behavior is 'egregious'." Hemmings v. Tidyman's, Inc., 285 F.3d 1174, 1197 (9th Cir. 2000). Dillard's argues the EEOC cannot show its conduct in requiring employees to submit a doctor's note setting forth the underlying medical condition requiring absence from work was undertaken "with malice or with reckless indifference." Dillard's cites the Sixth Circuit's decision in Lee approving of a similar policy, as well as two EEOC informal opinion letters which it argues approves of similar doctor note policies. However, there is evidence in the record that Ms. Scott told Dillard's that she believed its policy requiring her to disclose her medical condition in order to excuse her health-related absence from work was unlawful. There is no evidence that Dillard's took any action at that time to investigate the lawfulness of its policy. Dillard's citation to recent authority such as Lee and a 2011 EEOC informal opinion letter are irrelevant because Dillard's could not have relied on such authority to determine the lawfulness of its Policy. To the extent Dillard's did any research on the issue, the only authority which existed at the time was Conroy, holding it was unlawful to require an employee to reveal her medical condition. Therefore, the Court concludes there exist genuine issues of material fact precluding summary judgment on the EEOC's claim for punitive damages.

Finally, Dillard's argues the EEOC's claim for injunctive relief is moot because Dillard's rescinded the challenged policy in July of 2007, more than a year before the EEOC filed its complaint. The post-July 2007 Sick Pay Policy does not require employees to submit any doctor's note and Dillard's "has no current plans to alter this policy." [Savage Decl., Doc. 73-2, ¶ 6.] "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." Friends of the Earth, Inc. v. Laidlaw, 528 U.S. 167, 189 (2000). However, "[a] case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Id. (quoting United States v. Concentrated Phosphate Export Assn., 393 U.S. 199, 203 (1968)). The party asserting mootness bears the burden of demonstrating the challenged conduct cannot reasonably be expected to start up again. Id. Here, Dillard's has filed an equivocal declaration stating it "has no *current* plans to alter" its post-July 2007 policy. This equivocal statement, coupled with Dillard's continued assertion that it is entitled as a matter of law to inquire

1 into its employee's medical condition, is insufficient to show it is "absolutely clear that the
2 allegedly wrongful behavior could not reasonably be expected to recut." Laidlaw, 528 U.S. at 189.
3 The Court DENIES Dillard's motion for summary judgment on the EEOC's claim for injunctive
4 relief.

5 *2.    Dillard's motion for summary judgment on individual claims*

6 In its second motion, Dillard's argues the EEOC should be precluded from pursuing claims
7 on behalf of anyone the EEOC did not identify during its administrative investigation.  In addition,
8 Dillard's argues its is entitled to summary judgment on the individual claims of Corina Scott, Irma
9 Moreno, and Allyson Mazon.

10        a.    Claims on behalf of individual other than Scott, Moreno, and Mazon

11 Dillard's argues that the EEOC is precluded from seeking relief on behalf of any individual
12 it did not identify during its administrative process. At the very least, Dillard's argues the Court
13 should bar the EEOC from pursuing claims on behalf of anyone other than Scott, Moreno, and
14 Mazon, or anyone else who was not terminated as a result of the Attendance Policy.

15 The EEOC exercises "the same enforcement powers, remedies, and procedures that are set
16 forth in Title VII ... when it is enforcing the ADA's prohibitions against employment
17 discrimination on the basis of disability." EEOC v. W.H. Braum, Inc., 347 F.3d 1192, 1195-96 (9th
18 Cir. 2003) (citing EEOC v. Waffle House, 534 U.S. 279, 285 (2002)).  Thus, the Court looks to
19 cases regarding the EEOC's authority and powers in the Title VII context to determine the scope
20 of this representative action. Title VII "establishes a comprehensive administrative procedure
21 whereby the parties involved, including the EEOC, have the fullest opportunity to resolve charges
22 of discrimination without resorting to the courts." EEOC v. Am. Nat'l Bank, 652 F.2d 1176,
23 1184-85 (4th Cir. 1981).  Thus, before it can initiate civil litigation, Title VII requires the EEOC to
24 (1) receive a charge from an individual and to notify the employer of the charge, (2) investigate
25 that charge and related charges, (3) determine that "reasonable cause" exists to believe that
26 discrimination occurred, and (4) attempt conciliation of all charges against the employer.  See 42
27 U.S.C. § 2000e-5(b); EEOC v. Pierce Packing, 669 F.2d 605, 607 (9th Cir. 1982).

28 The EEOC enjoys significant latitude to investigate claims of discrimination, and to allege

1  claims in federal court based on the results of its investigations, but there is a clear and important
2  distinction between "facts gathered during the scope of an investigation and facts gathered during
3  the discovery phase of an already-filed lawsuit."  EEOC v. Jillian's of Indianapolis, IN, Inc., 279 F.
4  Supp. 2d 974, 979 (S.D. Ind. 2003); see also EEOC v. CSRT Van Expedited, Inc., 2009 WL
5  2524402, at *17 (quoting EEOC v. Target Corp., 2007 WL 1461298 (E.D. Wis. May 16, 2007)).
6  The EEOC "may not use discovery in the resulting lawsuit 'as a fishing expedition' to uncover
7  more violations."  Target, 2007 WL 1461298, at *3 (citing EEOC v. Harvey L. Walner & Assoc.,
8  91 F.3d 963, 971 (7th Cir. 1996).  Nonetheless, the EEOC need not bring a charge on behalf of
9  each similarly-situated employee so long as its pre-litigation efforts were sufficient to put the
10 employer on notice of the scope of the claims.  Bean v. Crocker Nat'l Bank, 600 F.2d 765, 759

11        Here, as the Court explained in its June 14, 2011 order on Dillard's motion to preclude the
12 EEOC from pursuing certain claims, the scope of the EEOC's pre-litigation efforts was sufficient
13 to put Dillard's on notice of possible claims on behalf of current and former employees of its El
14 Centro store.  The Court in that order explicitly denied Dillard's motion to preclude the EEOC
15 from pursuing claims on behalf of any employee other than Ms. Scott.  The Court sees no reason
16 to re-visit that decision at this point in the litigation.  Furthermore, contrary to Dillard's assertion,
17 both the EEOC's charge and the complaint in this case seeks relief for Dillard's violation of
18 § 12112(d)(4)(A) without regard to whether the affected employee was terminated.  Thus, the
19 EEOC is not precluded from seeking relief on behalf of individuals who were affected by the
20 Attendance Policy but who were not terminated.

21        Finally, Dillard's argues the Court should bar the EEOC from pursuing the claims of the 60
22 individuals it identified on January 27 and 31, because the late disclosure effectively prohibits
23 Dillard's from conducting discovery as to the claims of those individual claimants.  However, the
24 EEOC proceeded diligently to obtain the relevant underlying documents which allowed it to
25 identify the individual claimants at the El Centro store.  Any prejudice to Dillard's from the late

1 disclosure can be cured by allowing a brief additional period of time for discovery.[8]  The Court

2 DENIES Dillard's motion to preclude the EEOC from pursuing claims on behalf of anyone other

3 than Ms. Scott, Ms. Moreno, and Ms. Mazon.

4 b.        Individual claims of Ms. Scott, Ms. Moreno, and Ms. Mazon

Dillard's also moves for summary judgment on the individual claims asserted by the EEOC on behalf of Ms. Scott, Ms. Moreno, and Ms. Mazon, arguing the undisputed facts demonstrate they cannot prevail on their claims as a matter of law.

*i.        Corina Scott*

The EEOC has asserted a claim that Dillard's violated § 12112(d)(4)(A) by requiring Ms. Scott to disclose confidential medical information and terminating her in retaliation for her complaints about the policy.  Dillard's argues it is entitled to summary judgment because Ms. Scott could have complied with its Attendance Policy without revealing her diagnosis or disability-related information and her termination was the natural consequence of the failure to provide any explanation for her absences from work.

Ms. Scott started working for Dillard's on February 21, 2006.  On May 13, 2006, she received a written notice of four unexcused tardies. [Scott Depo, Exhibit 28.] On May 18, 2006, Ms. Scott received a written notice of six unexcused tardies. [Scott Depo., Exhibit 29.] On May 24, 2006, she received a written Final notice for eight unexcused tardies. [Scott Depo., Exhibit 30; Ervin Decl., ¶ 5, Tab 2.] Ms. Scott was absent from work on May 29, May 31, June 2, and June 3, 2006. [ Ervin Decl., ¶ 5.] On June 2, 2006, Ms. Scott obtained a note from her medical provider stating "off work this week return 6/5/06." [Scott Depo., Exhibit 33.] Because the note did not indicate the underlying reason Ms. Scott was absent from work (i.e. the condition being treated as required by the Policy), Ms. Scott's supervisor, Penny Ervin, did not accept the note. [Ervin Decl., ¶ 6.; Scott Depo., p.50-51.] Ms. Ervin told Ms. Scott she needed to write some reason

---

[8]As explained below with regard to the individual claims of Ms. Scott, Ms. Moreno, and Ms. Mazon, Dillard's has not demonstrated it is entitled to judgment as a matter of law because a reasonable jury could conclude Dillard's inquiry was not job-related or justified by business necessity. Because the individual claimants recently identified by the EEOC would be in a similar situation, the Court is doubtful that further motions for summary judgment would be appropriate with regard to those claims.

1  for the absence, and suggested Ms. Scott "write you have a stomach flu." [Scott Depo., pp. 51-53.]
2  Ms. Scott told Ms. Ervin she did not believe she had to disclose the nature of her illness because
3  that was private information and she was not required by law to disclose it. [Scott Depo., p. 55-
4  56.] After Ms. Ervin would not accept the note, Ms. Scott consulted with her doctor, who told her
5  she did not have to disclose the nature of her illness.[9] [Scott Depo., p. 63-64, 69-72.] Ms. Scott
6  called Ms. Ervin the morning of June 6, 2006, after speaking with her doctor, and again told Ms.
7  Ervin she believed the privacy laws prohibited Dillard's from requiring her to disclose her medical
8  information. [Scott Depo., p. 73.] At that time, Ms. Ervin informed Ms. Scott her employment had
9  been terminated. [Scott Depo., pp. 69, 73.]
10       Based upon these undisputed facts, Dillard's has failed to demonstrated it is entitled to
11  judgment as a matter of law on either the retaliation or § 12112(d)(4)(A) claim.  As explained
12  above with regard to Dillard's motion for summary judgment on the facial validity of the policy,
13  on its face, the policy required an employee to disclose "the nature of the absence (such as
14  migraine, high blood pressure, etc ....)" and "the condition being treated." These are inquiries
15  capable of revealing whether Ms. Scott had a disability.  Indergard, 582 F.3d at 1056.  Once Ms.
16  Scott provided a doctor's note regarding the time she was off work, and notified Dillard's of her
17  privacy concerns in disclosing the condition being treated, the burden shifts to Dillard's to
18  demonstrate the continued inquiry was job-related and a business necessity. Rohr, 555 F.3d at 862;
19  Yin v. State of California, 95 F.3d 864, 868 (9th Cir. 1996) (discussing standard of proving
20  business necessity for medical examination under § 12112(d)(4)(A)[10]).  Dillard's argues the note
21  Ms. Scott provided was insufficient to allow it to determine her absence from work was in fact

---

[9]As a side note, it seems Ms. Scott's doctor saw other Dillard's employees, because he was aware of the Dillard's policy of requiring the note to state the "condition being treated."  The doctor told Ms. Scott the policy was not appropriate. [Scott Depo., p. 64.]

[10]In Yin, the employee had missed an inordinate number of days at work over a four year time period.  Thus, when she returned to work from another absence, her supervisor requested a copy of the employee's medical records and requested she submit to an independent medical examination.  In its brief, Dillard's cites Yin related to the issue of when an employer may appropriately inquire regarding an underlying medical condition under § 12112(d)(4)(A). The court in that case, however, assumed the purpose of the exam was to determine whether the employee was "an individual with a disability or ... the nature or severity of [her] disability." Thus, the only question was whether the exam was job related or a business necessity.

medically-necessary, or that she was medically able to return to work. The question, however, is whether Dillard's needed to know the condition for which the doctor was treating Ms. Scott in order to confirm her absence from work was legitimate. [Ervin Decl., ¶ 8 (stating the primary reason they requested information regarding the nature of the illness was to confirm the legitimacy of the employee's claim she was unable to work due to a medical reason). A reasonable jury could conclude Dillard's has not satisfied its burden of demonstrating the additional detailed inquiry was job-related or necessary.

Similarly, although Dillard's argues it was entitled to terminate Ms. Scott because of her excessive tardiness and four unexcused absences, a reasonable jury could conclude the termination was in retaliation for her complaint about the Policy. In order to prove retaliation, the EEOC must establish (a) Ms. Scott engaged in protected activity, (b) she suffered an adverse action, and (c) a causal connection exists between the protected conduct and the adverse action. Nilsson v. City of Mesa, 503 F.3d 947, 954 (9th Cir. 2007). If the EEOC makes a *prima facie* showing on each of these elements, the burden shifts to Dillard's to articulate a legitimate non-retaliatory reason for its actions. Id. Here, the EEOC has shown Ms. Scott engaged in a protected activity (i.e. refusing to subject herself to Dillard's policy) and was immediately terminated. A reasonable jury could find that Dillard's terminated Ms. Scott because she engaged in protected activity, and not because of her prior tardiness or absences. The Court DENIES Dillard's motion for summary judgment on the EEOC's claims on behalf of Ms. Scott.[11]

   ii.   *Irma Moreno and Allyson Mazon*

As to both Ms. Moreno and Ms. Mazon, Dillard's first argues summary judgment is appropriate because the only claim the EEOC identified in the complaint was related to an employee who was terminated as a result of the Attendance Policy. Because neither Ms. Moreno nor Ms. Mazon were terminated, Dillard's argues they are not "similarly situated" such that the EEOC is barred from pursuing those claims in this case. However, the EEOC's investigation and

---

[11]As noted above in the discussion regarding Dillard's first motion, the Ninth Circuit has held that the damages provision of 42 U.S.C. § 1981a does not allow for compensatory and punitive damages for ADA claims of retaliation under § 12203. Alvarado, 588 F.3d at 1268. Therefore, the EEOC is limited to pursuit of injunctive relief with regard to Dillard's alleged retaliatory termination of Ms. Scott.

1  complaint both allege Dillard's Attendance Policy violated § 12112(d)(4)(A) without regard to
2  whether the affected employee was terminated.  The fact Ms. Moreno and Ms. Mazon were not
3  terminated does not preclude the EEOC from pursuing their claims based upon § 12112(d)(4)(A).

4  As set forth in the Background section above, it is undisputed that on two occasions in
5  November 2006 and April 2007, Ms. Moreno was absent from work for health-related reasons.
6  On both occasions, Ms. Moreno initially received a note from her physician which failed to
7  include the condition being treated or nature of the illness.  When Dillard's refused to accept the
8  notes offered by Ms. Moreno, she returned to her doctor and received a note which did specify the
9  condition.  Similarly, on five occasions in November 2005, December 2005, January 2006 (twice),
10 and February 2006, Ms. Mazon sought to excuse health-related absences under Dillard's policy.
11 Each time, Dillard's required Ms. Mazon to disclose the condition being treated and would not
12 accept a doctor's note unless it specified such condition.

13 Dillard's policy requiring Ms. Moreno and Ms. Mazon to disclose the condition for which
14 they were being treated was an inquiry tending to disclose a disability and thus prohibited by
15 § 12112(d)(4)(A).  Indergard, 582 F.3d at 1056.  Dillard's has made to attempt to demonstrate the
16 additional inquiry required of Ms. Moreno and Ms. Mazon was job-related and a business
17 necessity.  Rohr, 555 F.3d at 862.  Based thereon, the Court DENIES Dillard's motion for
18 summary judgment as to these individual claims asserted by the EEOC.

### *Conclusion*

20 For the reasons set forth herein, the Court DENIES Dillard's motions for summary
21 judgment [Doc. Nos. 73 and 76] in their entirety.  Discovery is hereby re-opened to allow Dillard's
22 an opportunity to conduct depositions of the newly identified claimants.  Discovery shall be
23 completed on or before May 10, 2012.  The Pretrial Conference is continued from May 14 to
24 July 16, 2012, at 10:30 a.m.  Counsel shall contact Magistrate Judge Lewis forthwith to schedule a
25 settlement conference.

26 **IT IS SO ORDERED**.

27
28 Dated: February 9, 2012

*Irma E. Gonzalez*
**IRMA E. GONZALEZ**
United States District Judge