ANNA Y. PARK, CA SBN 164242
THOMAS S. LEPAK, CA SBN 245649
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
LOS ANGELES DISTRICT OFFICE
255 East Temple Street, Fourth Floor
Los Angeles, California 90012
Telephone:    (213) 894-1032
Facsimile:    (213) 894-1301
E-Mail:       lado.legal@eeoc.gov
              thomas.lepak@eeoc.gov

Attorneys for Plaintiff
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

**BRYAN CAVE LLP**
Sean D. Muntz, California Bar No. 223549
3161 Michelson Drive, Suite 1500
Irvine, CA 92612
Telephone: (949) 223-7000
Facsimile:  (949) 223-7100
Email: sean.muntz@bryancave.com

**BRYAN CAVE LLP**
Jay A. Zweig, Arizona Bar No. 011153 (admitted *pro hac vice*)
One Renaissance Square
Two North Central Avenue, Suite 2200
Phoenix, AZ 85004-4406
Telephone: (602) 364-7000
Facsimile:  (602) 364-7070
Email: jay.zweig@bryancave.com

**BRYAN CAVE LLP**
Karen K. Cain, Missouri Bar No. 47420 (admitted *pro hac vice*)
1200 Main Street, Suite 3500
Kansas City, MO 64105-2100
Telephone: (816) 372-3200
Facsimile:  (816) 374-3300
Email: karen.cain@bryancave.com

Attorneys for Defendants
Dillard's, Inc. and Dillard Store Services, Inc.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) Case No. CV 3:08-CV-1780 CAB PCL |
| Plaintiff, | ) |
| v. | ) **[PROPOSED] CONSENT DECREE AND ORDER** |
| DILLARD'S INC.; DILLARD STORE SERVICES, INC.; and DOES 1-11, INCLUSIVE, | ) |
| Defendants. | ) |

Plaintiff U.S. Equal Employment Opportunity Commission (the "EEOC") and Defendants Dillard's, Inc. and Dillard Store Services, Inc. ("Defendants") hereby stipulate and agree to entry of this Consent Decree ("Decree") to resolve the following as to all employees who have claims within the scope of the following Complaint and Charges:

A.     The EEOC's Complaint against Defendants in <u>U.S. Equal Employment Opportunity Commission v. Dillard's Inc.; Dillard Store Services, Inc.; and Does 1-11, Inclusive</u>, Civil No. 08-CV-1780 IEG JMA, filed on September 29, 2008, in the United States District Court for the Southern District of California (the "Lawsuit").  The EEOC filed the Lawsuit under the American's with Disabilities Act, as amended, 42 U.S.C. § 12112, *et seq.* (the "ADA"), alleging that Defendants discriminated against Charging Party Scott and a class of similarly situated employees by requiring the disclosure of confidential medical information and interfering with their rights under the ADA, and that Defendants subjected Charging Party Scott to retaliatory discharge.  The Lawsuit concerns Defendants' Imperial Valley Mall Dillard's employees subjected to these alleged discriminatory practices from August 16, 2005, though the present.  EEOC is the sole plaintiff in the Lawsuit.

B.     The EEOC Charge of Discrimination No. 487-2009-00291 (Mitchell v. Dillards Dept. Store 942) filed on January 22, 2009 (the "Mitchell Charge"), alleging unlawful medical inquiries and claims associated with Defendants' leave of absence policy providing for employment termination after

1    a fixed time period of leave from work ("Fixed Leave Policy"), both of which EEOC claims are in
2    violation of the Americans with Disabilities Act of 1990, as amended.

3        C.      The EEOC Commissioner's Charge of Discrimination No. 480-2012-00207
4    (Commissioner Ishimaru v. Dillard's Inc.) filed on October 21, 2011 (the "Commissioner's Charge"),
5    alleging violations of the ADA throughout all Dillard's stores nationwide regarding the required
6    disclosure of confidential medical information in order for an absence to be excused.

7        D.      Defendants deny all allegations set forth in and/or within the reasonable scope of the
8    Lawsuit, the Mitchell Charge and the Commissioner's Charge and expressly deny that they violated the
9    ADA or any provision thereof in any manner as to any Dillard's employee, at any Dillard's store,
10   nationwide from March 2005 to the present.  Defendants further expressly deny that they retaliated
11   against Corina Scott in violation of the ADA.  Nothing in this Decree shall be construed as an admission
12   by Defendants of any violation of any applicable law.

13                                              **I.**

14                        **PURPOSES AND SCOPE OF THE DECREE**

15       A.      The Parties to this Decree are the EEOC and Defendants.  This Decree shall be binding
16   on and enforceable against Defendants and their respective officers, directors, agents, successors and
17   assigns.

18       B.      The parties have entered into this Decree for the following purposes:

19               1.      To provide appropriate monetary and injunctive relief;

20               2.      To ensure employment practices in compliance with federal law;

21               3.      To ensure a workplace free from retaliation;

22               4.      To modify policies, procedures, and practices regarding employment
23   discrimination on the basis of disability, including policies, procedures, and practices regarding
24   employer requests for confidential medical information and maximum leaves of absence;

25               5.      To ensure training of personnel regarding the ADA/ADAAA; and

26               6.      To ensure effective record-keeping procedures.

27       C.      The scope of this Decree is to apply to Defendants' facilities nationwide unless otherwise
28   indicated in this Decree.

## II.

## **RELEASE OF CLAIMS**

A.      This Decree fully and completely resolves all issues, claims, and allegations against Defendants that are set forth in and/or are within the reasonable scope of the Lawsuit, the Mitchell Charge, and the Commissioner's Charge.  As of the Effective Date of this Decree, no individual, class of individuals, or government entity (including the EEOC) can file or maintain an administrative charge or suit against Defendants based on the issues, claims, and/or allegations released by this Decree.

B.      Nothing in this Decree shall be construed to preclude any party from bringing suit to enforce this Decree in the event that any party hereto fails to perform the promises and representations contained herein.

C.      Nothing in this Decree shall be construed to limit or reduce Defendants' obligation to comply fully with the ADA/ADAAA or any other federal employment statute.

D.      This Decree in no way affects the EEOC's right to bring, process, investigate, or litigate other charges outside the scope of this Decree that may be in existence or may later arise against Defendants in accordance with standard EEOC procedures.

## III.

## **JURISDICTION**

A.      The Court has jurisdiction over the parties and the subject matter of the Lawsuit, Mitchell Charge, and Commissioner's Charge.  The Lawsuit, Mitchell Charge, and Commissioner's Charge assert claims that, if proven, would authorize the Court to grant the equitable relief set forth in this Decree.

B.      The terms and provisions of this Decree are fair, reasonable, and just.

C.      This Decree conforms with the Federal Rules of Civil Procedure and the ADA/ADAAA and is not in derogation of the rights or privileges of any person.

D.      The Court shall retain jurisdiction of the Action during the duration of the Decree for the purposes of entering any order, judgment, or decree that may be necessary to implement the relief provided herein.

**IV.**

**EFFECTIVE DATE AND DURATION OF DECREE**

A.      The provisions and agreements contained herein are effective immediately upon the date which this Decree is entered by the Court ("the Effective Date").

B.      Except as otherwise provided herein, this Decree shall remain in effect for three (3) years after the Effective Date.

**V.**

**MODIFICATION AND SEVERABILITY**

A.      This Decree constitutes the complete understanding of the Parties with respect to the matters contained herein.

B.      By mutual agreement of the Parties, this Decree may be amended or modified in the interests of justice and fairness in order to effectuate the provisions of the Decree.  No waiver, modification, or amendment of any provision of this Decree will be effective unless made in writing and signed by an authorized representative of each of the Parties.

C.      If one or more of the provisions of the Decree are rendered unlawful or unenforceable, the Parties shall make good faith efforts to agree upon appropriate amendments to this Decree in order to effectuate the purposes of the Decree.  In any event, the remaining provisions will remain in full force and effect unless the purposes of the Decree cannot, despite the Parties' best efforts, be achieved.

**VI.**

**COMPLIANCE AND RESOLUTION**

A.      The Parties expressly agree that if the EEOC has reason to believe that Defendants have failed to comply with any provision of this Decree, the EEOC may bring an action before this Court to enforce the Decree.  Prior to initiating such action, the EEOC will notify Defendants and their legal counsel of record, in writing, of the nature of the dispute.  This notice shall specify the particular provision(s) that the EEOC believes Defendants have breached.  Defendants shall have fifteen (15) days to attempt to resolve or cure the breach, however, the Parties can agree to extend this period upon mutual consent.

B.     The Parties agree to cooperate with each other and use their best efforts to resolve any dispute referenced in the EEOC notice.

C.     After fifteen (15) days have passed with no resolution or agreement to extend the time further, the EEOC may petition this Court for resolution of the dispute, seeking all available relief, including an extension of the term of the Decree for such period of time as Defendants or their successors are shown to be in breach of the Decree.

## VII.

## MONETARY RELIEF

A.     <u>Total Monetary Relief</u>

In settlement of the Scott Lawsuit, the Mitchell Charge and the Commissioner's Charge, Defendants shall pay the gross sum of two million dollars ($2,000,000.00).  The gross sum is inclusive of all individual monetary relief and "Class Fund" monetary relief, as defined and specified below.  The EEOC has full and complete discretion under the terms of this Decree to determine the amounts of any payments to be distributed and the characterization of such payments as income, wages or otherwise, as hereinafter described in this Decree.  The EEOC's full and complete discretion is a material term of this Decree.

B.     <u>Monetary Relief – Charging Party Scott and Charging Party Mitchell</u>

1.     In settlement of Charging Party Corina Scott's claims in the Scott Lawsuit, Defendants shall pay to her such portion of the Total Monetary Relief as designated by the EEOC.

2.     In settlement of Charging Party Christopher Mitchell's claims in the Mitchell Charge, Defendants shall pay to him such portion of the Total Monetary Relief as designated by the EEOC.

3.     Payments to Scott and Mitchell will be made for the full amounts designated by EEOC, which amounts will be paid to each in two checks: (a) a non-wage compensation check will be issued for damages in the form of emotional pain and suffering, which will be ninety percent (90%) of the distribution amount, and for this payment Defendants, in the ordinary course, shall prepare and distribute 1099 tax reporting forms to Scott and Mitchell, if required by law, and shall make any appropriate reports to the Internal Revenue Service and other tax authorities; and (b) a wage payment

will be made for the remaining ten percent (10%) of the distribution amount, which payment will be treated as wages, subject to deductions for federal and state withholding taxes and other deductions Defendants are required by law to make.  Defendants shall pay the employer's portion of all deductions required by law, including but not limited to FICA and FUTA taxes, and such amounts shall not be deducted from payment of the monetary settlement amounts of Scott or Mitchell.  Defendants, in the ordinary course, shall prepare and distribute W-2 forms to Scott and Mitchell.

  C. <u>Monetary Relief – Class Fund</u>

   In settlement of the class-based claims in (1) the Lawsuit and (2) the Mitchell Charge and Commissioner's Charge collectively, Defendants shall establish a class fund (the "Class Fund"), in the amount of two million dollars ($2,000,000) less the amounts paid to Charging Parties Scott and Mitchell.  Within fifteen (15) days of the Effective Date, Defendants shall deposit the Class Fund amount in a segregated interest bearing account from which all payments for class-based claims will be made.  Any interest earned at the rate available to Defendants when the account is established will be maintained in the account and disbursed to the class as designated by EEOC or the agreed-upon charity as detailed below.

   1. <u>Lawsuit Claimants</u>

    a. A "Lawsuit Claimant" is any person who at any time was employed by Defendants at the Imperial Valley Mall Dillard's store and whom the EEOC has identified as an individual impacted by the policy requiring disclosure of medical information to excuse an absence. The EEOC shall have the sole discretion to determine each Lawsuit Claimant.  The EEOC shall have sole discretion to designate the amount of the Class Fund to be distributed to each Lawsuit Claimant and to characterize such payment as income, wages or otherwise, as hereinafter described in this Decree.

    b. The EEOC shall notify Defendants of the identity of each Lawsuit Claimant, the individualized distribution of the Class Fund, and the proper address to which each Lawsuit Claimant payment shall be mailed.

    c. Within fifteen (15) days of the EEOC providing notice of distribution amounts, Defendants shall forward via first class mail to each Lawsuit Claimant who is a current employee at the time of distribution, a single check for the gross amount designated by EEOC which

payment will be treated as wages, subject to deductions for federal and state withholding taxes and other deductions Defendants are required by law to make.  Defendants shall pay the employer's portion of all deductions required by law, including but not limited to FICA and FUTA taxes, and such amounts shall not be deducted from wage payments to the claimants.  Defendants, in the ordinary course, shall prepare and distribute W-2 forms to these claimants.   Within three (3) business days of mailing the aforementioned payments, Defendants shall submit a copy of the checks and any related correspondence to Anna Y. Park, Regional Attorney, U.S. Equal Employment Opportunity Commission, 255 East Temple Street, 4th Floor, Los Angeles, California  90012.

d.      Within fifteen (15) days of the EEOC providing notice of distribution amounts, Defendants shall forward via first class mail to each Lawsuit Claimant who is a former employee at the time of distribution, payment for a gross amount equal to the full amount set forth in the notice of distribution amounts as described below:

i.      For any Lawsuit Claimant EEOC designates as receiving an amount for damages only in the form of emotional pain and suffering, as opposed to damages for emotional pain and suffering in addition to damages for lost wages, Defendants shall mail a non-wage compensation check which will be one-hundred percent (100%) of the distribution amount.  Defendants, in the ordinary course, shall prepare and distribute a 1099 tax reporting form to each such Lawsuit Claimant, if required by law, and shall make any appropriate reports to the Internal Revenue Service and other tax authorities.   Within three (3) business days of mailing the aforementioned payments, Defendants shall submit a copy of the checks and any related correspondence to Anna Y. Park, Regional Attorney, U.S. Equal Employment Opportunity Commission, 255 East Temple Street, 4th Floor, Los Angeles, California  90012.

ii.      For any Lawsuit Claimant EEOC designates as receiving an amount for damages both in the form of emotional pain and suffering and in the form of lost wages, Defendants shall mail two checks for a gross amount equal to the full amount set forth in the notice of distribution amounts.  The two checks will include one check for non-wage compensation for damages in the form of emotional pain and suffering, and one check for wage compensation for damages in the form of lost wages.  The non-wage check will be ninety percent (90%) of the distribution amount, and

8

for this payment Defendants, in the ordinary course, shall prepare and distribute a 1099 tax reporting form to each claimant, if required by law, and shall make any appropriate reports to the Internal Revenue Service and other tax authorities.  The wage check will be ten percent (10%) of the distribution amount, which payment will be treated as wages, subject to deductions for federal and state withholding taxes and other deductions Defendants are required by law to make.  For each wage check, Defendants shall (a) pay the employer's portion of all deductions required by law, including but not limited to FICA and FUTA taxes, and such amounts shall not be deducted from wage payments to the claimants and (b) prepare and distribute a W-2 form to each claimant in the ordinary course.

2.     <u>Mitchell and Commissioner's Charge Claimants</u>

a.     A "Mitchell/Commissioner's Charge Claimant" ("CC Claimant") is any person employed by Defendants at any Dillard's store, (1) at any time between August 16, 2005, and August 15, 2009, whom the EEOC has identified as an individual impacted by the policy of requiring disclosure of medical information, or (2) whom EEOC has identified as disabled within the meaning of the ADA or ADAAA and was terminated after May 28, 2008, up to the Effective Date, following the expiration of the employee's leave under Dillard's fixed leave period and whom the EEOC has identified as an individual whom Dillard's failed to accommodate consistent with the requirements of the ADA and/or ADAAA.  The EEOC shall have sole discretion to identify CC Claimants and for good cause may grant an exemption of any above-cited limitation on the date of harm.

b.     A "Potential CC Claimant" is any person employed by Defendants at any Dillard's store, (1) at any time between August 16, 2005, and August 15, 2009, and/or (2) who was terminated at any time between May 28, 2008, and the Effective Date, after having taken the maximum amount of leave available under Defendant's leave of absence policy for the employee's own physical or mental health condition.  A Potential CC Claimant shall exclude seasonal employees who are defined as employees who worked at Dillard's for a period less than 90 days.

D.     <u>Claims Notice Process</u>

1.     Defendants shall, for any Potential CC Claimant (1) who was employed at any time between August 16, 2005, and July 7, 2007, and/or (2) who was terminated at any time between May 28, 2008, and the Effective Date, after having taken the maximum amount of leave available under

Defendant's leave of absence policy for the employee's own physical or mental condition, provide notice as follows.

       a.     Within sixty (60) days of the Effective Date the Defendants shall

          (i)     determine the validity of each such Potential CC Claimant's most-recent address utilizing the National Change of Address Database or the most-recent email address from Defendants' own records,

          (ii)     send to each such Potential CC Claimant, via first class mail, a Notice and Claim Form and a Business Reply Envelope (BRE) addressed to the Defendants,

          (iii)     provide to the EEOC certification that the Defendants mailed a Notice and Claim Form and BRE or emailed a Notice and Claim Form to each such Potential CC Claimant, and

          (iv)     instruct the USPS to notify Defendants of any returned mailed Notice and Claim Form.

    Any such Potential CC Claimant whose original Notice and Claim Form is not returned undeliverable shall have sixty (60) days from the date the Defendants mailed an unreturned Notice and Claim Form either to return a completed Claim Form or complete and submit an on-line Claim Form if an on-line Claim Form is available at that time.

       b.     Within thirty (30) days of any Notice and Claim Form being returned to sender as undeliverable, Defendants shall

          (i)     research such Potential CC Claimant's most-recent address and further use its best efforts, including a search of a database such as Accurint, to locate such Potential CC Claimant,

          (ii)     if Defendants find a more-recent address for such Potential CC Claimant, mail the Notice and Claim Form to such Potential CC Claimant at the more-recent address, and

          (iii)     if Defendants fail to find a more-recent address for any such Potential CC Claimant(s), Defendants shall in thirty (30) day intervals following the mailing of the first

group of Notice and Claim Forms, provide to the EEOC certification outlining their efforts to locate such Potential CC Claimant(s).

Any such Potential CC Claimant whose original Notice and Claim Form was returned undeliverable shall have sixty (60) days from the date of the re-mailing either to return a completed Claim Form or to complete and submit an on-line Claim Form if an on-line Claim Form is available at that time. Any such Potential CC Claimant whose original Notice and Claim Form is returned undeliverable and for whom Defendants cannot find a more-recent address within thirty (30) days of the Notice and Claim Form being returned to sender as undeliverable shall not be entitled to collect from the Fund. Any such Potential CC Claimant whose second, re-mailed Notice and Claim Form is returned undeliverable shall not be entitled to collect from the Fund. At thirty day intervals after mailing of the first group of second, re-mailed Notice and Claim Forms, Defendants shall forward to EEOC any submitted or entered Claim Form received from any Potential CC Claimant and shall forward to EEOC either any second, re-mailed Notice and Claim Form that has been returned undeliverable or a list identifying any Potential CC Claimant whose second, re-mailed Notice and Claim Form was returned undeliverable. Defendants shall have no obligation to locate any Potential CC Claimant whose original Notice and Claim Form is returned undeliverable after one hundred eighty (180) days from the date of mailing, and such Potential CC Claimants, absent otherwise timely submission of the Notice and Claim Form, shall not be entitled to collect from the Fund.

2.     Defendants shall, for any Potential CC Claimant who was employed at any time between July 8, 2007, and August 15, 2009, provide notice as follows. Within sixty (60) days of the Effective Date, Defendants shall issue a press release to news outlets nationally explaining the rights of such Potential CC Claimants under this Decree, including the Internet address to access an on-line Notice and Claim Form. The press release shall be posted on Dillard's website for the 90-day notice period. Concurrently with issuing the press release, the Defendants shall provide to the EEOC certification that the Defendants issued the press release and to whom. Such Potential CC Claimant shall have ninety (90) days from the date the Defendants submitted the press release to return a completed Notice and Claim Form.

E.      Claims Distribution Process

1.      At thirty (30) day intervals after mailing the first group of Notice and Claim Forms, Defendants shall forward to the EEOC any submitted or entered Claim Form received from any Potential CC Claimant.  Defendants, in cooperation with a claims administrator, shall apply EEOC's criteria to identify who is a CC Claimant.  Defendants shall ensure that the claims administrator has access to the EEOC and that the claims administrator works with the EEOC to identify qualifying CC Claimants in accordance with the EEOC's criteria.  EEOC shall supply the criteria for identification of CC Claimants to Defendants within thirty (30) days of the Effective Date.  There shall be no time limitation on EEOC's determination of who is a CC Claimant.  The EEOC shall have sole discretion to designate the amount of the Class Fund to be distributed to each CC Claimant, and for good cause may grant an exemption of any above-cited deadline to return a questionnaire.

2.      Within sixty (60) days of receipt of the EEOC's notice regarding the distribution of the Class Fund, Defendants shall forward via first class mail to each CC Claimant who is a current employee at the time of distribution, a single check in the gross amount set forth in the notice of distribution amounts.  The payment will be treated as wages, subject to deductions for federal and state withholding taxes and other deductions Defendants are required by law to make.  Defendants shall pay the employer's portion of all deductions required by law, including but not limited to FICA and FUTA taxes, and such amounts shall not be deducted from wage payments to the claimants.  Defendants, in the ordinary course, shall prepare and distribute W-2 forms to these claimants.  Within three (3) business days of mailing the aforementioned payments, Defendants shall submit a copy of each check and any related correspondence to Anna Y. Park, Regional Attorney, U.S. Equal Employment Opportunity Commission, 255 East Temple Street, 4th Floor, Los Angeles, California, 90012.

3.      Within sixty (60) days of receipt of the EEOC's notice of distribution amounts, Defendants shall forward via first class mail to each CC Claimant who is a former employee at the time of distribution, payments for a gross amount equal to the full amount set forth in the notice of distribution amounts, as described below.

i.      For any CC Claimant EEOC designates as receiving an amount for damages only in the form of emotional pain and suffering, as opposed to damages for emotional pain

and suffering in addition to damages for lost wages, Defendants shall mail a non-wage compensation check which will be one-hundred percent (100%) of the distribution amount.  Defendants, in the ordinary course, shall prepare and distribute a 1099 tax reporting form to each such CC Claimant, if required by law, and shall make any appropriate reports to the Internal Revenue Service and other tax authorities.  Within three (3) business days of mailing the aforementioned payments, Defendants shall submit a copy of the checks and any related correspondence to Anna Y. Park, Regional Attorney, U.S. Equal Employment Opportunity Commission, 255 East Temple Street, 4th Floor, Los Angeles, California  90012.

    ii. For any CC Claimant EEOC designates as receiving an amount for damages both in the form of emotional pain and suffering and in the form of lost wages, Defendants shall mail two checks for a gross amount equal to the full amount set forth in the notice of distribution amounts.  The two checks will include one check for non-wage compensation for damages in the form of emotional pain and suffering, and one check for wage compensation for damages in the form of lost wages.  The non-wage check will be ninety percent (90%) of the distribution amount, and for this payment Defendants, in the ordinary course, shall prepare and distribute a 1099 tax reporting form to each claimant, if required by law, and shall make any appropriate reports to the Internal Revenue Service and other tax authorities.  The wage check will be ten percent (10%) of the distribution amount, which payment will be treated as wages, subject to deductions for federal and state withholding taxes and other deductions Defendants are required by law to make.  For each wage check, Defendants shall (a) pay the employer's portion of all deductions required by law, including but not limited to FICA and FUTA taxes, and such amounts shall not be deducted from wage payments to the claimants and (b) prepare and distribute a W-2 form to each claimant in the ordinary course.

    4. Any amounts in the Class Fund, including any accrued interest, not distributed within one (1) year of the Effective Date of this Decree shall, within thirty (30) days of the one-year anniversary of the Effective Date, be donated to a charity that promotes equal opportunities for people with disabilities or that otherwise is approved by EEOC.

# VIII.

## <u>GENERAL INJUNCTIVE RELIEF</u>

A.     <u>Disability Discrimination</u>

Defendants, their officers, agents, management (including all supervisory employees), successors, assigns, and all those in participation with them, or any of them, are hereby enjoined not to discriminate against any individual in the terms and conditions of employment on the basis of disability.

B.     <u>Unlawful Medical Inquiries</u>

Defendants, their officers, agents, management (including all supervisory employees), successors, assigns, and all those in participation with them, or any of them, are hereby enjoined from implementing any policy, procedure, or practice whereby they unlawfully request any employee to reveal confidential medical information, or discipline, suspend, or terminate any employee for refusing to reveal confidential medical information. Defendants are specifically enjoined from implementing the disclosure policy found by this Court to be facially discriminatory.

C.     <u>Unlawful Maximum Leave Policies</u>

Defendants, their officers, agents, management (including all supervisory employees), successors, assigns, and all those in participation with them, or any of them, are hereby enjoined from implementing any policy, procedure, or practice whereby they limit the amount of leave any employee or group of employees may take, and are instead enjoined to engage in the interactive process with any employee with a disability who requests leave as a reasonable accommodation.

D.     <u>Retaliation</u>

Defendants, their officers, agents, management (including all supervisory employees), successors, assigns and all those in participation with them, or any of them, are hereby enjoined not to engage in, implement or permit any action, policy, procedure, or practice with the purpose of retaliating against any current or former employee or applicant of Defendants or their successors, or either of them, because he or she has in the past, or during the term of this Decree, (a) opposed any practice made unlawful under the ADA/ADAAA; (b) filed a charge of discrimination alleging such practice; (c) testified or participated in any manner in any investigation (including, without limitation, any internal investigation undertaken by Defendants or their successors) or proceeding in connection with

14

the Lawsuit, Mitchell Charge, or Commissioner's Charge, or relating to any claim of an ADA/ADAAA violation; (d) was identified as a possible witness or claimant in the Lawsuit, Mitchell Charge, or Commissioner's Charge; (e) asserted any rights under this Decree; or (f) sought and/or received any relief in accordance with this Decree.

## IX.

### SPECIFIC INJUNCTIVE RELIEF

A.      Equal Employment Opportunity Consultant

1.      Defendants shall retain an Equal Employment Opportunity Consultant ("Consultant") to implement and monitor Defendants' compliance with the ADA/ADAAA and the terms of this Decree.  The Consultant shall have demonstrated experience in the area of employment discrimination and the ADA/ADAAA.  Defendants shall ensure that the Consultant has access to documents and individuals necessary in meeting his/her obligations under the Decree.

2.      The Consultant shall be subject to the EEOC's approval, which shall not be unreasonably withheld.  Within ten (10) days of the Effective Date or any intended change in the Consultant, Defendants shall notify the EEOC of the identity of its preferred Consultant.  If the EEOC approves of Defendants' preferred choice, Defendants shall retain the Consultant within thirty (30) days of the Effective Date.  If the EEOC disapproves of Defendants' preferred choice, the EEOC shall notify Defendants of such disapproval and provide a list of three acceptable potential Consultants.  Defendants shall retain one of the acceptable potential Consultants within ten (10) days of the EEOC's notice.

3.      The Consultant's responsibilities shall include the following:

a.      Implementing the review and revision of policies concerning disability discrimination, retaliation, employer requests for confidential medical information, and employee requests for leave, so that the policies conform with employment discrimination laws and the provisions of this Decree;

b.      Ensuring distribution of the revised policies to all employees, including management and supervisory employees, as required under this Decree;

c.      Ensuring the posting and/or distribution of the Policy, Non-Discrimination Statement, and Notice of Consent Decree and Settlement, as required under this Decree;

d.      Implementing effective training for Defendants' employees as required under this Decree, including training to ensure that all employees understand Defendants' policies regarding the disclosure of confidential medical information; understand that a supervisor cannot discipline, suspend, or terminate an employee for failing to reveal confidential medical information or for complaining about disability discrimination; and understand how to file a complaint of disability discrimination or ADA retaliation;

e.      Implementing effective training for Defendants' supervisory employees and human resources staff as required under this Decree, including training to ensure Defendants' supervisors and human resources staff understand Defendants' policies regarding the disclosure of confidential medical information; understand that a supervisor cannot discipline an employee for failing to reveal confidential medical information or for filing a complaint relating to requested disclosure of such information; understand the responsibility for engaging in an interactive process; understand the procedures for responding to a complaint of disability discrimination or ADA retaliation; and understand the distinction between requirements of the ADA/ADAAA and the Family and Medical Leave Act;

f.      Holding supervisory employees accountable for compliance with the revised policies, including evaluating supervisors knowledge of the policies and responses to complaints of discrimination, and monitoring supervisors' employment decisions with regard to requests for accommodation and leave;

g.      Facilitating Defendants' record-keeping and reporting as required under this Decree; and

h.      Further ensuring compliance with the terms of this Decree.

Defendants shall bear all costs associated with the selection and retention of the Consultant and the performance of his/her duties.

B.      <u>Policies and Procedures</u>

1.      In consultation with the Consultant, Defendants shall create policies and procedures against employment discrimination and retaliation prohibited by the ADA/ADAAA (the "Policy"). The Policy shall include:

a.      A clear explanation of prohibited conduct, including disability discrimination, retaliation, unlawful medical inquiries, and failure to engage in the interactive process;

b.      A clear revocation of any policy or practice that violates the ADA/ADAAA in order to protect the rights of individuals from disclosing health information in order to excuse a health-related absence, and the rights of individuals to depend on the validity of medical documentation or notice provided by employee family members or other associates for purposes of ADA/ADAAA;

c.      A clear explanation of employee rights and company policies with regard to employer requests for confidential medical information, including consolidation of all practices and procedures into one official policy to comply with the ADA/ADAAA in implementing leave requests and distinguishing clearly rights and obligations under the ADA/ADAAA from that under the Family and Medical Leave Act;

d.      A clear explanation of employee rights and company policies with regard to employee leave, including rescission of any minimum-term-of-employment restrictions on leave provided as a reasonable accommodation under the ADA/ADAAA, rescission of any policy that requires termination or other adverse action after a certain amount of leave taken, and rescission of any policy requiring advance notice of leave in contravention of Defendants' responsibility to engage in the interactive process;

e.      A clear explanation of employee rights and company policies with regard to timely administration of the interactive process in response to requests for reasonable accommodation, including leave;

f.      A clear explanation of procedures for providing effective reasonable accommodations with regard to all benefits and privileges of employment, including essential functions of the job such as leave and non-essential functions of the job such as trainings, meetings, interactive processes, investigations, and company events and facilities;

g.      A clear explanation of how employees qualify for a reasonable accommodation, including a fast-track process for certain physical or mental impairments that should easily be concluded to be disabilities as listed at 29 C.F.R. § 1630.2(j)(3)(iii);

h.      A clear explanation of the duties of supervisory and human resources employees in administering a timely interactive process and effective reasonable accommodation, including provision of a manager manual with clear, step-by-step instructions and checklists outlining the interactive process and contact information for the office he/she can contact with questions, and an employee handout with a clear, step-by-step guide to the interactive process so the employee understands what is expected of him/her and what is required of Defendants during the process;

i.      A clear explanation of the duties of supervisory and human resources employees in conducting a follow-up meeting with the applicant or employee to evaluate the continued effectiveness of any accommodation provided and to discuss whether further engagement in the interactive process if necessary;

j.      A clear explanation of the procedures for filing a complaint of disability discrimination, including processes by which Defendants' ensure a prompt, thorough, and impartial investigation into and resolution of any complaint of disability discrimination or retaliation;

k.      Notice that anyone who makes a complaint of disability discrimination or provides information related to such complaints are protected against retaliation; and

l.      Notice that Defendants will take prompt and appropriate corrective action when it determines that disability discrimination and/or ADA retaliation occurred.

2.      Within ninety (90) days of the Effective Date of this Decree, Defendants shall provide to the EEOC a copy of the Policy.  Within one hundred twenty (120) days of the Effective Date, Defendants shall ensure that it has distributed the Policy to all employees, including management employees.  Within one hundred twenty (120) days of the Effective Date, Defendants shall submit to the EEOC a statement confirming the distribution of the Policy.

3.      Within thirty (30) days of the hire date of any person hired after the initial distribution but within the term of the Decree, Defendants shall ensure that it has distributed the Policy to that person.  On an annual basis through the term of the Decree, Defendants shall submit to the EEOC a statement confirming the distribution of the Policy to any person hired after the initial distribution but within the term of the Decree.

C.      <u>Non-Discrimination Statement</u>

Within sixty (60) days of the Effective Date, Defendants shall ensure that it has included in all employee leave request forms and policy manuals a non-discrimination statement inclusive of disability discrimination, medical inquiries, the interactive process, and requests for reasonable accommodation. Within ninety (90) days of the Effective Date, Defendants shall submit to the EEOC a statement confirming the inclusion of the non-discrimination statement.

D.      <u>Posting of Notice of Consent Decree and Settlement</u>

Within sixty (60) days of the Effective Date, Defendants shall ensure that it has posted the Notice of Consent Decree and Settlement (attached to this Decree as Attachment A) in a conspicuous place accessible to all employees.  Within sixty (60) days of the Effective Date, Defendants shall submit to the EEOC a statement confirming the posting of the Notice of Consent Decree and Settlement.

E.      <u>Training</u>

1.      In consultation with the Consultant, Defendants shall review and revise their policies and procedures regarding employee trainings in the ADA/ADAAA and the Policy.  However, the training can be conducted by a trainer of Defendant's choosing.  The trainer shall submit training materials to the Consultant for review prior to the implementation of training under the terms of this Decree.  The Consultant shall have final approval on the training.  Any conflict shall be submitted to the EEOC for resolution.

2.      Within one hundred twenty (120) days of the Effective Date and annually thereafter through the term of the Decree, Defendants shall provide live or recorded training of at least thirty (30) minutes duration to each non-supervisory employee.  The training shall cover the following:

a.      Employee rights under the Policy, including how to notify Defendants of an accommodation request or potential need for an accommodation, the distinctions between FMLA and accommodation issues under the ADA/ADAAA, and  how to request medical  leave under the ADA/ADAAA and/or the Family and Medical Leave Act;

b.      Employee rights under federal laws regarding employment discrimination on the basis of disability and ADA retaliation;

c.       Employee rights to file a complaint of discrimination or retaliation, including the procedure for filing such complaints with the EEOC.

Within sixty (60) days of the hire date of any employee hired after any such training described above but within the term of the Decree, Defendants shall provide the required training in either live or recorded format.

3.       Within one hundred twenty (120) days of the Effective Date and annually thereafter through the term of the Decree, Defendants shall provide live or recorded training of at least one-hour duration to each manager or supervisor.  The training shall cover the following:

a.       Each attendee's obligations under the Policy, including how to recognize an accommodation request or a potential need for an accommodation, how to respond to a request for accommodation or leave, how to engage in the interactive process, and how to respond to a complaint of disability discrimination;

b.       Each attendee's obligations in complying with federal laws regarding employment discrimination on the basis of disability and retaliation, including the distinction between the requirements of the ADA/ADAAA and the Family and Medical Leave Act; and

c.       The purposes and goals of the ADA/ADAAA, including the prohibition of unlawful medical inquiries into personal health information and the role of the interactive process in exploring potential reasonable accommodations.

Within sixty (60) days of the hire date of any manager or supervisor hired after any such training described above but within the term of the Decree, Defendants shall provide the required training in either live or recorded format.

4.       Within one hundred twenty (120) days of the Effective Date and annually thereafter through the term of the Decree, Defendants shall provide live or recorded training of at least one-hour duration to each human resources/compliance staff member.  The training shall cover the following:

a.       Each attendee's obligations under the Policy, including how to respond to a complaint of discrimination, how to engage in the interactive process, and how to investigate a complaint of discrimination;

b.      Each attendee's obligations in complying with federal laws regarding employment discrimination on the basis of disability and retaliation, including the distinction between the requirements of the ADA/ADAAA and the Family and Medical Leave Act;

c.      Each attendee's particular role in implementing an accommodation and monitoring its effectiveness.

Within sixty (60) days of the hire date of any human resources/compliance staff member hired after any such training described above but within the term of the Decree, Defendants shall provide the required training in either live or recorded format.

5.      Any persons required to attend any training under this Decree shall verify their attendance in writing.  Annually through the term of the Decree, Defendants shall produce to the EEOC documents verifying the occurrence of all training sessions required under this Decree, including the written training materials used, a description of the training provided, and a list of the names and job titles of attendees at each training session.

F.      Supervisor Accountability

In consultation with the Consultant, Defendants shall create procedures and practices by which Defendants hold supervisory and human resources employees accountable for compliance with the Policy, including evaluating their knowledge of their responsibilities under the Policy and this Decree, evaluating their responses to complaints of discrimination, and monitoring their decisions with regard to requests for accommodation and leave.  The procedures and practices shall institutionalize appropriate and consistent performance reviews, counseling, training, and/or disciplinary actions intended to evaluate compliance and hold supervisory and human resources employees accountable for failing to comply with the ADA/ADAAA, the Policy, and this Decree.

G.      Record Keeping

1.      In consultation with the Consultant, Defendants shall establish a record-keeping procedure that provides for the centralized tracking of discrimination complaints involving the ADA as well as the monitoring of such complaints, including the identities of the parties involved.  The records to be maintained shall include all documents generated through the duration of the Decree in connection with any complaint, any investigation into any complaint, and any resolution of any complaint.

2.      In consultation with the Consultant, Defendants shall establish a record-keeping procedure that provides for the centralized tracking of employee requests for medical leave.  The records to be maintained shall include all documents generated through the duration of the Decree in connection with any leave request, any resolution of any leave request, and any consequence of any actual leave taken, if any.

3.      In consultation with the Consultant, Defendants shall establish a record-keeping procedure that provides for all information obtained regarding the medical condition, medical history, or medical leave of the applicant is collected and maintained on separate forms and in separate medical files and is treated as a confidential medical record, as required under the ADA/ADAAA.

4.      Defendants shall maintain all records required by this Decree and retain them throughout the term of the Decree.

H.      Reporting

Defendants shall provide the following reports annually throughout the term of the Decree:

1.      A statement verifying that all training sessions required under this Decree during the previous twelve (12) months occurred;

2.      A statement verifying that all employees required to attend a training session under this Decree during the previous twelve (12) months received the required training;

3.      A statement verifying that all employees required to receive the Policy during the previous twelve (12) months received the Policy;

4.      A description of all disability discrimination and/or ADA/ADAAA retaliation complaints made since the submission of the immediately preceding report hereunder.  This description shall include the names of the individuals alleging disability discrimination or ADA retaliation; the nature of the disability discrimination or ADA retaliation; the names of the alleged perpetrators of disability discrimination or ADA retaliation; the dates of the alleged disability discrimination or ADA retaliation; a brief summary of how each complaint was resolved, including the efforts taken by Defendants to ensure compliance and accountability for supervisory and human resources employees; and the identity of the employee(s) who investigated and/or resolved each complaint.  If no results have been reached as of the time of the report, the result shall be included in the next report;

5.      A statement verifying that the Policy, Non-Discrimination Statement, and Notice of Consent Decree and Settlement continued to be posted and/or implemented as required under this Decree; and

6.      A statement from the Consultant describing Defendants efforts to comply with this Decree during the previous twelve (12) months.  Specifically this statement shall encompass the following:

a.      An independent assessment of the effectiveness of Defendants' revised policies and procedures in protecting employees from unlawful medical inquiries, failures to provide reasonable accommodations, failures to engage in the interactive process, retaliation, and other discrimination under the ADA/ADAAA;

b.      An independent assessment of the effectiveness of Defendants' trainings in protecting employees from unlawful medical inquiries, failures to provide reasonable accommodations, failures to engage in the interactive process, retaliation, and other discrimination under the ADA/ADAAA;

c.      An independent assessment of the effectiveness of Defendants' trainings and supervisory accountability in educating supervisors of their responsibilities under the ADA/ADAAA and the terms of this Decree, including their roles in providing reasonable accommodations and engaging in the interactive process; and

d.      An independent assessment of any areas of compliance with the ADA/ADAAA and the terms of this Decree needing improvement, as well as methods for obtaining that improvement.

I.      <u>Employment Information and Records</u>

If contacted for a job reference for Corina Scott, Irma Moreno, or Brittany Rios Kim, Defendants shall provide no information other than dates of employment, salary, and positions held.  For any identified Claimant, Defendants shall purge his/her personnel file of any record of discipline under the policy or practice requiring the disclosure of confidential medical information or maximum leave, maintain these records in a separate personnel file, and treat these records as confidential.

# X.

## **MISCELLANEOUS PROVISIONS**

A.      During the term of this Decree, Defendants shall provide any potential successor-in-interest with a copy of this Decree within a reasonable time of not less than thirty (30) days prior to the execution of any agreement for acquisition or assumption of control of any of all of Defendants' facilities, or any other material change in corporate structure.  Defendants shall simultaneously inform the EEOC of any such agreement for acquisition, assumption of control, or other material change in corporate structure.

B.      During the term of this Decree, Defendants shall assure that each of its officers, managers, and supervisors is aware of any term(s) of this Decree which may be related to his or her job duties.

C.      Unless otherwise stated, all notices, reports and correspondence required under this Decree shall be delivered to the attention of Anna Y. Park, Regional Attorney, U.S. Equal Employment Opportunity Commission, 255 East Temple Street, 4th Floor, Los Angeles, California, 90012; facsimile number (213) 894-1301.

## XI.

## COSTS AND ATTORNEYS' FEES

Each party shall bear its own costs of suit and attorneys' fees.  Defendants shall bear all costs associated with implementing this Decree including the hiring of the Consultant and the claims administration process.

All parties, through the undersigned, respectfully apply for and consent to the entry of this Consent Decree Order.

Respectfully Submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Anna Y. Park

Date:  12/17/12                By:  ___/s/ Anna Y. Park___
Anna Y. Park
Attorneys for Plaintiff EEOC


BRYAN CAVE LLP

Date:  12 /17/12               By:  ___/s/ Karen K. Cain___

Attorneys for Defendants
DILLARD'S, INC. and DILLARD STORE
SERVICES, INC.

## [PROPOSED] ORDER

**GOOD CAUSE APPEARING:**

The Court hereby finds that compliance with all provisions of the foregoing Decree is fair and adequate.  The Court hereby retains jurisdiction for the term of the foregoing Consent Decree, and the provisions thereof are hereby approved.

**IT IS SO ORDERED.**

DATED: December 18, 2012      _____

THE HONORABLE CATHY A. BENCIVENGO
U.S. DISTRICT JUDGE
UNITED STATES DISTRICT COURT

25